UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EMIL R. KUBAS,

    Plaintiff,

v.                                                            Case No. 8:05-cv-2093-T-TBM

JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty-seven years of age at the time of his administrative hearing on remand. Plaintiff has a GED. His past relevant work was as an auto mechanic, gas station attendant, limousine driver, and fire extinguisher servicer. Plaintiff applied for disability benefits in September 1996, alleging disability as of September 28, 1996, by reason of congestive heart failure. The Plaintiff's application was denied originally and on reconsideration.

Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). (R. 40-81). By a decision dated April 7, 1999, the ALJ

determined that Plaintiff could perform a limited range of light work and was accordingly not disabled. (R.16-26). On January 9, 2001, the district court granted the Commissioner's motion for remand for further evaluation of the evidence. (R. 331-32). In accordance with the Order of Remand from the Appeals Council (R. 333-34), another administrative hearing was conducted November 27, 2001.

At the hearing on remand, Plaintiff testified that he was unable to work at any full time employment by reason of his heart condition. According to the Plaintiff his condition leaves him fatigued, tired, and causes him to become out of breath easily. The fatigue is ultimately what caused him to stop working. Plaintiff claims his medications cause dizziness and fatigue and from time to time, nausea and diarrhea. Plaintiff blamed his sixty pound weight gain on his medications as well. According to the Plaintiff, he has more bad days than good days and every day his condition requires him to nap two to three times a day for up to an hour

As Plaintiff describes his daily routine, he fixes tea and a light breakfast in the morning and cares for his three cats. He does some tinkering about the house and when he tires he lays down for a nap. He listens to music or watches television and can prepare his own meals. Plaintiff relies on others for his housework and he does no yard work. Plaintiff indicated he could not walk a full city block without becoming winded and tired. Although he can sit comfortably for a while, his back stiffens up on him. He elevates his legs while seated because of poor circulation. When he does not do this his feet become numb. Plaintiff estimates he can lift up to a maximum of twenty pounds.

Plaintiff drives, but only as necessary and he indicated he would be unable to return to his former work as a limo driver.

Plaintiff has no insurance and as a consequence, he sees his heart doctor only once every six months. He had not received any recent testing because he could not afford it. By his testimony, he cannot work eight hours a day at full time employment and at best could work only "very part time" work. See Plaintiff's testimony (R. 294-307).

Allen Freeman, a vocational expert (hereinafter "VE"), testified essentially by reference to his testimony at the prior hearing. Under the hypothetical offered at that previous hearing which limited Plaintiff in a number of areas,[1] the witness had opined that Plaintiff could perform the work of a telephone surveyor, egg candler, assembly packager, and agriculture sorter. The VE then updated the job numbers related to each of these positions. On inquiry as to whether or not these jobs would allow the individual to elevate his leg, the VE opined that the survey position as well as the monitoring position would offer Plaintiff the best opportunity for such a combination, however, the VE opined that the numbers of such jobs would be reduced by thirty to forty percent with such limitation. (R. 307-318).

---

[1] That hypothetical assumed a capacity for a restricted range of sedentary to light work with limitations for maximum occasional lift of twenty pounds, and frequently less, three hours maximum standing and walking in an eight hour day, with a sit stand option, limitations for no heights, squatting, balancing or driving and no working around dangerous machinery. (R. 76-78).

3

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are fairly well set forth by the parties and are addressed herein as necessary.

By his decision of May 20, 2002, the ALJ determined that while Plaintiff has severe impairments related to cardiomyopathy, obesity, and poorly controlled hypertension, he nonetheless had the residual functional capacity to perform a limited range of sedentary to light exertional work. By the ALJ's assessment, the Plaintiff could occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds but could not sit or stand for long periods and required the ability to alternate sitting and standing at will, was limited from crouching, climbing, driving, and needed to avoid working at unprotected heights and around dangerous or moving machinery and extreme temperatures. Additionally, he needed accommodation for elevating his legs thirty to sixty degrees for twelve minutes an hour each hour of the work day. Upon these findings and upon the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 273-283). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically

4

determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

      A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

      It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's

decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

### III.

The Plaintiff raises a single claim on this appeal.  As stated by the Plaintiff:

Whether there was a substantial competent basis for failure to accept the treating doctor's medical records which indicated a listing level impairment and which precludes all work in the national economy.

Plaintiff urges that the medical evidence from treating physician, Dr. Kollagunta Chandrasekhar, establishes that he meets the listing at 20 C.F.R., part 404, subpt. P, App. 1, 4.02.  In particular, he urges that "[s]ection 4.02A requires 'left ventricular diastolic diameter of greater than 5.5 cm on two-dimensional echocardiography, resulting in inability to carry on any physical activity, and with symptoms of inadequate cardiac output, pulmonary congestion, systemic congestion, or anginal syndrome at rest (e.g., recurrent or persistent fatigue, dyspnea, orthopnea, anginal

discomfort.)'" (Doc. 15 at 9).  By his argument, his left ventricular diastolic diameter was greater than 5.5 cm on at least two echocardiagrams, one performed in 1994 and the other in 1997.  Id.  He complains that the ALJ inappropriately discounted the treating doctor's findings that he had marked limitations of physical activity and other limitations as well which Plaintiff urges establishes the other requirements of the listing.  Accordingly, Plaintiff urges that the Decision should be reversed for an award of benefits.

In response, the Commissioner urges that the Plaintiff cannot establish that his condition meets or equals the listing at 4.02 because he cannot establish the requisites of each of the subparts.  Thus, while the Plaintiff can cite to evidence of left ventricular diastolic diameter of greater than 5.5 cm, he cannot cite to medical evidence of a complete inability to carry on physical activity, nor any manifestation of inadequate cardiac output, pulmonary or systemic congestion, or anginal syndrome at rest for a period of twelve months or more as required under subsection A.  Similarly, the Commissioner urges that there is no evidence to satisfy all the requisites of subsection 4.04B either.

The listing of impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from engaging in gainful activity.  By meeting a listed impairment or otherwise establishing an equivalence, a Plaintiff is presumptively determined to be disabled regardless of his age, education, or work experience.  Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment.  Edwards v. Heckler, 736 F.2d 625, 628 (11th Cir. 1984).  However, at this stage of the evaluation process, the

burden is on the plaintiff to prove that he or she is disabled.  <u>Bell v. Bowen</u>, 796 F.2d 1350, 1352 (11th Cir. 1986); <u>Wilkinson v. Bowen</u>, 847 F.2d 660, 663 (11th Cir. 1987). In this circuit, a plaintiff must present specific findings that meet the various tests listed under the applicable listing.  Where the plaintiff claims an impairment that equals one of the listed impairments, he must present medical evidence which describes how the impairment has such an equivalency.  <u>Bell</u>, 796 F.2d at 1353.  Mere diagnosis of a listed impairment is not enough as the record must contain corroborative medical evidence supported by clinical and laboratory findings.  <u>Carnes v. Sullivan</u>, 936 F.2d 1215, 1218 (11th Cir. 1991).  To "equal" a listing, "the medical findings must be 'at least equal in severity and duration to the listed findings.'"  <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1224 (11th Cir.2002).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  <u>Broughton v. Heckler</u>, 776 F.2d 960, 961 (11th Cir. 1985); <u>see also</u> 20 C.F.R. § 1527(d)(2).  Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error.  In this circuit, where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true.  <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1053 (11th Cir. 1986). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments.  <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause for rejecting a treating

source's opinion may be found where such opinion is not supported by the evidence or where the evidence supports a contrary finding. Id.; Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).

After careful and independent review of the medical record, I conclude that the Commissioner is correct and Plaintiff has failed to demonstrate by medical findings that his condition met or equaled the listing at 4.02 at any time between his alleged onset date in September 1996 and prior to his date last insured for benefits, September 30, 2001.[2]  Further, a fair reading of the Decision reflects that the ALJ accurately addressed the records of Dr. Chandrasekhar in light of the standard applicable in this circuit and discounted them, in part, for reasons that I must conclude are supported by substantial evidence. Thus, upon my review, on the basis of the medical record, the ALJ could properly discount the September 1996, disability opinion of Dr. Chandrasekhar (R. 215) because it was founded upon a test from 1994 taken during a time of acute exacerbation and it ignored other clinical findings revealing a much improved condition thereafter. Further, the Decision reflects that the ALJ substantially credited the doctor's March 1998 functional capacity assessment (R. 203-05) apart from

---

[2]As urged by the Commissioner, the medical record supports that while Plaintiff had two echocardiagrams revealing left ventricular diastolic diameter of greater than 5.5 cm, not even Dr. Chandrasekhar found him incapable of carrying on "any physical activity" as called for by subsection 4.02A. While I find this a close issue, under the applicable standard, without such proof, the claim must be denied. Under § 402.B., Plaintiff's left ventricular ejection fraction appears consistently above the 30% ejection fraction called for by the listing on and after his alleged onset date. Furthermore, there is no showing of findings sufficient to satisfy the requisites of subsection B.1. As urged by the Commissioner, the statement by this doctor that Plaintiff suffered marked limitations in physical activity is, alone, insufficient under the applicable standard.

the indication of impairment related to Plaintiff's ability to reach, handle, push, and pull. As stated by the ALJ, the limitations related to these functions were not given controlling weight because they were not quantified by the doctor nor did the doctor explain how shortness of breath would contribute to such limitations. Clearly, these limitations were not quantified in any way by the doctor. The impairments related to seeing, speaking and handling were discounted entirely as unsupported by the medical record, a conclusion I find supported by the substantial evidence. As the Decision reflects, the ALJ squarely addressed this assessment by the treating doctor and expressly set forth his reasons for rejecting a portion of it. I find the reasons employed by the ALJ are founded in the record and thus adequate good cause for discounting the doctor's opinion. As for the February 1999, functional capacity assessment by Dr. Chandrasekhar (R. 265-68),[3] this assessment too was substantially credited by the ALJ both with the VE and in his decision. Only the new limitations, that Plaintiff would require unscheduled ten minute breaks every hour and likely miss work four times a month when suffering a "bad day," were outright rejected by the ALJ. By his reasoning, there was a lack of support in the medical record that such interruptions would occur with such frequency. On the contrary, the ALJ found that the medical records otherwise indicated that Plaintiff was seen for checkups on a regular basis from one to six months apart and did not reflect the need for unscheduled office visits or hospitalizations because of his condition. Finally, it is not insignificant that this doctor's own records did not support a conclusion that

---

[3]This assessment was updated by an addendum in December 2001, when the doctor reported no change in Plaintiff's status and that he was being followed every six months. (R. 348).

Plaintiff was disabled from all work.  By Dr. Chandrasekhar's own assessment, the Plaintiff was capable of "low stress jobs."  (R. 266).[4]

IV.

Here, there is no question that Plaintiff suffered from a heart condition and some resulting limitations.  However, Plaintiff does not meet the difficult burden of establishing that his condition meets or equals a listed impairment.  In reaching this conclusion, the ALJ did not run afoul of the standard applicable to the evaluation of treating doctor's records.  On this record, the ALJ could conclude that Plaintiff's symptoms could be reasonably maintained by regular check-ups, medication and diet and did not prevent him for low stress jobs which the VE found available in the economy.  For these reasons, I conclude that the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 4th day of January 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

---

[4] Regarding Plaintiff's criticism of the ALJ's use of the functional capacity assessments, it is worth noting that Plaintiff's counsel was given a full and fair opportunity to question the VE at the hearing on remand about any and all limitations she believed impacted the Plaintiff.  In these circumstances, a remand for further questioning of the VE would not be warranted.